**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MEDIA BANK, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **SCOTTeVEST, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, MEDIA BANK, LLC, by its attorneys Levenfeld Pearlstein, LLC, and for its Complaint against Defendant, SCOTTeVEST, Inc. ("Defendant"), states as follows:

### NATURE OF THE CASE

This is an action by Media Bank, LLC to recover sums due and owing to it from Defendant for services rendered pursuant to written agreements by and between the parties, and in the alternative, under a theory of unjust enrichment.

### THE PARTIES

1.      Media Bank, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.  At all relevant times, Media Bank, LLC conducted business as "MBuy" (hereinafter, "MBuy").

2.      MBuy is engaged in the business of media planning and purchasing.  MBuy works with its clients, prospective advertisers, to plan, evaluate and optimize media purchases across the spectrum of platforms and channels, including television, radio, print, digital and social media.

3.      Defendant is a corporation limited liability company organized under the laws of the State of Idaho, with its headquarters located in Ketchum, Idaho.

4. Defendant is engaged in the business of marketing and selling "SCOTTeVEST" branded outerwear and garments that feature a series of pockets designed to hold an array of electronic devices and other gadgets. "SCOTTeVEST" branded outerwear and garments are sold through retail resellers, as well as through Defendant's own website (https://www.scottevest.com/).

## JURISDICTION AND VENUE

5. Media Bank, LLC's sole member is MediaOcean, LLC, a Delaware limited liability company with its principal place of business in New York. MediaOcean's sole member is a New York corporation also headquartered in New York.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because of the diversity of citizenship between the parties (Media Bank, LLC is deemed a resident of Delaware, Illinois and New York, while Defendant is deemed a resident of Idaho), and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 pursuant to the terms of an express written agreement between the parties. Moreover, Defendant regularly does business in Illinois, is registered to do business in Illinois, and a substantial part of the events giving rise to the claim occurred within this judicial district.

## FACTS COMMON TO ALL COUNTS

8. In or about June 2018, Defendant engaged MBuy to assist it with the planning and purchase of media for what, at the time, was projected to be a multi-million-dollar nationwide advertising campaign.

9. On June 4, 2018, the parties executed an "MBuy Authorization" (a form that has since been renamed a "Mutual Business Agreement") to "clearly establish the roles and responsibilities of the parties involved in the planning, negotiation, and purchasing of media

inventory." A true and correct copy of the MBuy Authorization is submitted herewith as Exhibit A.

10. The MBuy Authorization was executed on behalf of Defendant by Marshall Rule, its President at the time.

11. Among other things, the executed MBuy Authorization reflects the parties mutual understanding regarding certain basic terms of the engagement:

    a. the initial term (6/4/18 – 12/31/18);

    b. the general services that MBuy would be providing to Defendant;

    c. the fees that would be charged by MBuy (based upon percentages of the purchases of varying types of media), and the Defendant's obligation to pay those fees; and

    d. an approximation and allocation of the Defendant's planned media purchases during the term.

12. The MBuy Authorization also expressly advised that the "next step" would be the execution of an "Insertion Order," containing the details surrounding a proposed advertising spend, and expressly requesting authorization for specific media purchases.

13. Pursuant to the MBuy Authorization, MBuy prepared and presented Defendant with two separate Insertion Orders, the first in August 2018 and the second in December 2018. A true and correct copy of the 2018 Insertion Orders are submitted herewith as Group Exhibit B.

14. The August 2018 Insertion Order specifically sought authorization from Defendant for various media purchases to "run" from September 1, 2018 to December 31, 2018.

15. The December 2018 Insertion Order specifically sought authorization from Defendant for a media purchase to run from December 14-31, 2018.

16. Notably, each of the Insert Orders contain the following terms:

**INSERTION ORDER TERMS**

General Placement Guidelines & Limitations of Liability

MBuy is not responsible for incorrect ad materials run when ad materials or instructions are not received by the ad material deadline. MBuy does not make corrections to ad creative. All ad creative must be submitted in final format. MBuy will not be held responsible for incorrect and/or invalid creative materials that are submitted from a previous placement. ***This agreement, along with the mutually signed Mutual Business Agreement and terms and conditions at www.mbuy.com/tc, which are incorporated by reference, contain the entire agreement of the parties and supersedes all prior discussions, agreements and undertakings between the parties with respect to the subject matter hereof; this Insertion Order supersedes inconsistent terms in the terms and conditions.***

\*              \*              \*              \*

Payment Terms

Payment to MBuy must be received by the payment terms selected below. In the event Advertiser and/or Advertiser Agency (collectively, "Advertiser-Purchaser"), as the case may be, fails to make payment, MBuy may discontinue all Ads until payment is received in full. A completed and signed Insertion Order constitutes a binding agreement between Advertiser-Purchaser and MBuy and shall guarantee advertising rates for the period identified in this document. Upon execution of the media buy between MBuy and the media vendor(s)/Publisher, MBuy has fully performed its obligation to purchase media on behalf of the customer. ***By signing the Agreement the Advertiser-Purchaser agrees to all conditions stated in this Insertion Order, as well as the terms and conditions available at www.mbuy.com/tc (the "TC").*** The Advertiser-Purchaser acknowledges and understands: (i) MBuy will not and shall not be required to make any payments on behalf of the Advertiser-Purchaser until MBuy receives all funds payable and/or due to it and (ii) fees owed to MBuy directly will be paid first and the remainder of the funds will be used to make payments on behalf of the Advertiser-Purchaser for the media costs. All capitalized terms used in this Insertion Order and not otherwise defined herein shall have the meaning ascribed to them in the TC.

Agreement to Terms

***The signature & date below constitutes acceptance of the terms of this Insertion Order and the individual signing represents and warrants that he/she has authority to sign this Insertion Order on behalf of the above listed Advertiser and, if applicable, the Advertiser-Agency.***

Group Exhibit B, page 2 of 3 (emphasis added).

17.     The complete "terms and conditions" incorporated by reference into the Insertion Orders were at all times available to Defendants. A true and correct copy of the terms and conditions as they appeared at the time at www.mbuy.com/tc is submitted herewith as Exhibit C.

18.     On information and belief, Defendant reviewed the terms and conditions at www.mbuy.com/tc prior to executing the 2018 Insertion Orders.

19.     Both of the 2018 Insertion Orders were executed by Marshall Rule on behalf of the Defendant in his capacity as its President.

20.     The total media purchase authorized by the Defendant in connection with the August 2018 Insertion Order was $815,000.

21.     MBuy executed all of the authorized purchases identified in the August 2018 Insertion Order, all of which ran as contemplated.

22.     The media purchase authorized by the Defendant in connection with the December 2018 Insertion Order was $15,000.

23.     MBuy executed the authorized purchases identified in the December 2018 Insertion Order, all of which ran as contemplated.

24.     Following the expiration of the initial term of the MBuy Authorization, on January 8, 2019, the parties entered into a Mutual Business Agreement (in the same form as its predecessor form, the MBuy Authorization) for the calendar year 2019 and a contemplated $5,000,000 advertising campaign.  A true and correct copy of the Mutual Business Agreement is submitted herewith as Exhibit D.

25.     The Mutual Business Agreement was executed by Marshall Rule on behalf of the Defendant in his capacity as its President.

26.     Pursuant to the Mutual Business Agreement, MBuy prepared and presented Defendant with an Insertion Order specifically seeking authorization from Defendant for various media purchases to "run" from January 1, 2019 to January 31, 2019.  A true and correct copy of the 2018 Insertion Orders are submitted herewith as Exhibit E.

27.     The January 2019 Insertion Order had the same terms as those set forth in paragraph 15 above, and incorporated by reference the complete terms and conditions set forth in Exhibit C.

28.     The January 2019 Insertion Order was executed by Marshall Rule on behalf of the Defendant in his capacity as its President.

29.     The media purchase authorized by the Defendant in connection with the January 2019 Insertion Order was $115,000.  MBuy executed all of the authorized purchases identified in the January 2019 Insertion Order, all of which ran as contemplated.

30.     By invoice dated January 11, 2019, MBuy requested payment of $219,681.88 for media purchases in December 2018, most of which represented MBuy's "hard costs" payable to third party media.  A true and correct copy of the Invoice is submitted herewith as Exhibit F.

31.     By invoice dated January 14, 2019, MBuy requested payment of $104,292.21 for media purchases in January 2019, most of which represented MBuy's "hard costs" payable to third party media.  A true and correct copy of the Invoice is submitted herewith as Exhibit G.

32.     The invoices were payable within 30 days.

33.     Defendant did not pay either of the referenced invoices in a timely fashion.

34.     Despite repeated demands for payment, Defendant has failed and refused to pay the invoiced amounts.

### COUNT I – BREACH OF CONTRACT (2018 INSERTION ORDERS)

35.     MBuy incorporates by reference paragraphs 1-34 above.

36.     The 2018 Insertion Orders prepared for and presented to Defendant constitute an offer by MBuy to perform services pursuant to the terms set forth therein and incorporated by reference from www.mbuy.com/tc (Exhibit C), as well as the MBuy Authorization (Exhibit A).

37. By executing the 2018 Insertion Orders, Defendant accepted the offer described above.

38. There was consideration exchanged in the form of mutual promises by and between the parties as described above, thereby supporting the formation of a valid and enforceable contract (or contracts) based upon the terms set forth above.

39. MBuy performed its obligations under the parties' contract(s).

40. Defendant breached the contract(s) by failing to pay sums due and owing thereunder (as reflected in the invoice submitted as Exhibit D) to MBuy.

41. As a direct and proximate result of Defendant's breach of the contract(s), MBuy has been damaged in an amount equal to at least $219,681.88.

42. Under these circumstances, MBuy should be entitled to and seeks an award of prejudgment interest on the unpaid invoices pursuant to the Interest Act (815 ILCS 205/0.01 et seq).

43. Finally, pursuant to the terms and condition of the contract (Exhibit C, ¶ 13.10), MBuy is entitled to recover its attorneys' fees and costs incurred in connection with these proceedings.

WHEREFORE, Media Bank, LLC respectfully requests that this Court enter judgment in its favor and against Defendant on Count I, awarding compensatory damage in the amount of at least $219,681.88 plus prejudgment interest, awarding Plaintiff its attorneys' fees and costs incurred in this litigation, and granting such other and further relief as this Court deems just and equitable.

## COUNT II – BREACH OF CONTRACT (2019 INSERTION ORDER)

44. MBuy incorporates by reference paragraphs 1-43 above.

45.     The 2019 Insertion Order prepared for and presented to Defendant constitutes an offer by MBuy to perform services pursuant to the terms set forth therein and incorporated by reference from www.mbuy.com/tc (Exhibit C), as well as the Mutual Business Agreement (Exhibit D).

46.     By executing the 2019 Insertion Order, Defendant accepted the offer described above.

47.     There was consideration exchanged in the form of mutual promises by and between the parties as described above, thereby supporting the formation of a valid and enforceable contract based upon the terms set forth above.

48.     MBuy performed its obligations under the parties' contract.

49.     MBuy breached the contract by failing to pay sums due and owing thereunder (as reflected in the invoice submitted as Exhibit F) to MBuy.

50.     As a direct and proximate result of Defendant's breach of the contract, MBuy has been damaged in an amount equal to at least $104, 292.21.

WHEREFORE, Media Bank, LLC respectfully requests that this Court enter judgment in its favor and against Defendant on Count II, awarding compensatory damage in the amount of at least $104,292.21 plus prejudgment interest, awarding Plaintiff its attorneys' fees and costs incurred in this litigation, and granting such other and further relief as this Court deems just and equitable.

## COUNT III – UNJUST ENRICHMENT

51.     Pleading in the alternative, MBuy incorporates by reference paragraphs 1-50 above.

52.     MBuy rendered services and incurred expenses on behalf of Defendant with a reasonable expectation that it would be reimbursed for any such expenses incurred and would be reasonably compensated for such services rendered.

53.     Defendant would be unjustly enriched in the event it was permitted to retain the referenced benefits conferred upon it without having to reimburse MBuy for the expenses incurred on Defendant's behalf and without having to compensate MBuy for the services it rendered to Defendant.

WHEREFORE, Media Bank, LLC respectfully requests that this Court enter judgment in its favor and against Defendant on Count III, awarding damages in the amount of at least $323,974.09, and granting such other and further relief as this Court deems just and equitable.

Respectfully submitted,

**MEDIA BANK, LLC**

By:   _/s/ George J. Spathis_____
         One of its Attorneys

George J. Spathis, Esq. (ARDC 6204509)
Erin M. Mayer, Esq. (ARDC 6313447)
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
(312) 346-8380
gspathis@lplegal.com
emayer@lplegal.com

# EXHIBIT A



# MBuy Authorization

120 S. Riverside Plaza, Suite 1900
Chicago, IL 60606
Phone: 312 784 2336
Secure Fax: 312 870 1787
www.mbuy.com

Presented by: Rachel Stone

Client Name: Scott Jordan
Client Business Name: ScotteVest
Client Address: 411 East 6th St
Ketchum, ID 83340
Client Phone #: 3866-909-8378
Client Website: www.scottevest.com

**1. Getting Started:** The purpose of this agreement is to clearly establish the roles and responsibilities of the parties involved in the planning, negotiation, and purchasing of media inventory. To optimize and analyze your media buys for maximized results, MBuy will leverage its proprietary tools, technology, processes, and expertise to perform single source market analysis, negotiation(s), rate preparations and media purchases for **ScotteVest** (the "Advertiser").

**2. Mutual Non-Disclosure & Confidentiality Agreement:** Both parties agree that all information shared, including but not limited to: pricing proposals, insertion orders, posting reports and other deliverables are deemed confidential and may not be disclosed to any third party for a period of (24) months after the expiration of the term of this agreement. MBuy will not disclose specific unit rates.

**3. Term:** The initial term of this authorization agreement will commence on **6/4/2018** and continue until **12/31/2018** (the "Term").

**4. What We Do - MBuy Technology Platform Value:** Upon execution of this agreement, MBuy will provide access, via a dedicated MBuy account representative, to our proprietary Managed Media Services & Technology Platform including, but not limited to: optimized media negotiation and buying services, strategic media planning, market rate analysis, ongoing placement, execution, trafficking and stewardship of campaigns, a single point of accountability for all media types, consolidated billing and ROI reporting.

**5. Working Together - Advertiser Responsibilities:** Advertiser agrees to work in concert with the MBuy team to clearly communicate advertising campaign goals, key performance indicators, vendor selection, and overall marketing objectives. In order to receive actionable and optimized media plans and rate preparations from MBuy, the Advertiser agrees to provide relevant current and/or historical media unit rates and budgets for purposes of rate analysis and buy optimization. To ensure optimum results and to secure available inventory and MBuy rates upon acceptance of an approved insertion order, the Advertiser agrees to return approved insertion order(s) via email: **operations@mbuy.com**, certified secure electronic signature service or secure fax (to: 312-870-1780) within 48 hours of receipt. if MBuy's services are requested for media strategy & planning and no media execution occurs, a FTE rate is applied and the Advertiser agrees to pay MBuy as follows: Director at $125/hour and Account Manager/Media Analyst at $80/hour.

**5A: Fees-**
- MBuy will take a reduced margin of 18% (vs. 20%) on the planning and placement of digital media
- MBUY will charge a margin of 15% on the planning and placement of traditional media
- MBuy will charge a 6% fee for the planning and analysis of DRTV (typically 10%, 4% Analyze fee is being waived)

**6. Payment** – Unless alternate arrangements are made and agreed to in writing by MBuy, media placement will be executed and implemented only upon Advertiser payment. In the event Advertiser fails to make payment, MBuy may discontinue all advertising from the Advertiser until payment is received in full based on available cancellation terms. In the case of Network media or OOH, it is non-cancellable. Advertiser agrees to pay for media via check, electronic funds transfer, money order, cashier's check, or dedicated Advertiser escrow. MBuy shall only be liable for payments of media invoices if MBuy has been paid for those invoices by the Advertiser. MBuy will invoice Advertiser for all media costs, where possible, in advance of MBuy's payment date to allow for prompt prepayment by the Advertiser so that Advertiser may receive the benefit of any additionally available prepayment or similar discounts. Rate or billing adjustments shall be credited or charged to Advertiser on the next following regular invoice date or as soon as otherwise practical. All new media purchased by MBuy on behalf of Advertiser during the term of this Agreement will be MBuy Rates.

**7. Planning Allocations - Current & Future Media Spending:**

| Media Types | Campaign Flight | Market(s) | Addressable Budget |
|---|---|---|---|
| Digital | July 2018 – December 2018 | National | ~$910,000 (apprx) |
| Traditional | July 2018-December 2018 | Local/National | tbd |
| DRTV | July 2018-December 2018 | Local/National | $1,430,000 (apprx) |

**9. What Comes Next? Insertion Order:** A sample insertion order document can be provided for review as part of this agreement.

**10. Entire Agreement:** This document contains the entire agreement of both parties and supersedes all prior written or verbal discussions or agreements.

I understand and agree to the terms of the MBuy Authorization.

| | |
|---|---|
| Advertiser/ Agency Signature | 6/4/18 <br> Date |
| Marshall Rule <br> Advertiser/Agency Name | SCOTTeVEST <br> Advertiser/Agency Company |

| | |
|---|---|
| MBuy Signature | 6/4/18 <br> Date |
| Michael Parent <br> MBuy Name | SVP Media <br> Title |

# EXHIBIT B

DocuSign Envelope ID: 77F07F03-A7CA-40FA-9F1A-65CEACC9647A

120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-06379-1

# MBuy Insertion Order

## FOR IMMEDIATE ACTION

Advertiser PO Number:

### Advertiser Information
**Advertiser Name:** ScotteVest
**Street Address:** 411 East 6th Street
PO Box 1915
**City, State, Zip:** Ketchum, Idaho, 83340

### Billing Information
**Billing Name:** ScotteVest
**Street address:** 411 East 6th Street
PO Box 1915
**City, State, Zip:** Ketchum, Idaho, 83340

| Media Type | Media Description | Geography | Flight Start Date | Flight End Date | Notes | Media Cost |
|---|---|---|---|---|---|---|
| Video | Premium Online Video | National | 10/1/2018 | 12/31/2018 | | USD 53,000.00 |
| Social | Social Video | National | 10/1/2018 | 12/31/2018 | | USD 51,029.00 |
| Native | Native | National | 10/1/2018 | 12/31/2018 | | USD 58,031.00 |
| Social | FB/IG | National | 10/1/2018 | 12/31/2018 | | USD 56,031.00 |
| Display | Brand Audience Prospecting | National | 9/1/2018 | 12/31/2018 | | USD 36,531.00 |
| Display | Dynamic Product Prospecting | National | 9/1/2018 | 12/31/2018 | | USD 82,000.00 |
| Direct Buys | Amazon AAP | National | 9/1/2018 | 12/31/2018 | | USD 54,878.00 |
| Direct Buys | OwnerIQ | National | 10/1/2018 | 12/31/2018 | | USD 75,000.00 |
| Search | PPC | National | 9/1/2018 | 12/31/2018 | | USD 114,000.00 |
| Display | Brand Retargeting | National | 9/1/2018 | 12/31/2018 | | USD 24,500.00 |
| Display | Dynamic Product Retargeting | National | 9/1/2018 | 12/31/2018 | | USD 82,000.00 |
| Direct Buys | Amazon AMG | National | 10/1/2018 | 12/31/2018 | | USD 34,000.00 |
| Direct Buys | Amazon AMS | National | 9/1/2018 | 12/31/2018 | | USD 94,000.00 |
| | | | | | **Total Media Cost:** | USD 815,000.00 |

Page 1 of 3



120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-06379-1

## INSERTION ORDER TERMS

### General Placement Guidelines & Limitations of Liability

MBuy is not responsible for incorrect ad materials or instructions are not received by the ad material deadline. MBuy does not make corrections to ad creative. All ad creative must be submitted in final format. MBuy will not be held responsible for incorrect and/or invalid creative materials that are submitted from a previous placement. This agreement, along with the mutually signed Mutual Business Agreement and terms and conditions at a www.mbuy.com/tc, which are incorporated by reference, contain the entire agreement of the parties and supersedes all prior discussions, agreements and undertakings between the parties with respect to the subject matter hereof; this Insertion Order supersedes inconsistent terms in the terms and conditions.

Materials provided by the Advertiser to MBuy in relation to the provision of these Services do not include any personal data (as defined in the European General Data Protection Regulation) and MBuy does not act as a processor on behalf of the Advertiser in respect of any personal data. In cases where Advertiser requires MBuy to process personal data, Advertiser shall provide instructions to MBuy in writing and enter into a separate agreement regarding the processing of personal data.

### Mutual Non-Disclosure & Confidentiality Agreement

Both parties agree all Insertion Order specific information shared, including but not limited to: rates, discounts, and/or other deliverables are deemed confidential and may not be disclosed to any third party.

### Payment Terms

Payment to MBuy must be received by the payment terms selected below. In the event Advertiser and/or Advertiser Agency (collectively, "Advertiser-Purchaser"), as the case may be, fails to make payment, MBuy may discontinue all Ads until payment is received in full. A completed and signed Insertion Order constitutes a binding agreement between Advertiser-Purchaser and MBuy and shall guarantee advertising rates for the period identified in this document. Upon execution of the media buy between MBuy and the media vendor(s)/Publisher, MBuy has fully performed its obligation to purchase media on behalf of the customer. By signing the Agreement the Advertiser-Purchaser agrees to all conditions stated in this Insertion Order, as well as the terms and conditions available at www.mbuy.com/tc (the "TC"). The Advertiser-Purchaser acknowledges and understands: (i) MBuy will not and shall not be required to make any payments on behalf of the Advertiser-Purchaser until MBuy receives all funds payable and/or due to it and (ii) fees owed to MBuy directly will be paid first and the remainder of the funds will be used to make payments on behalf of the Advertiser-Purchaser for the media costs. All capitalized terms used in this Insertion Order and not otherwise defined herein shall have the meaning ascribed to them in the TC.

### Agreement to Terms

The signature & date below constitutes acceptance of the terms of this Insertion Order and the individual signing represents and warrants that he/she has authority to sign this Insertion Order on behalf of the above listed Advertiser and, if applicable, the Advertiser-Agency.

## PAYMENT INFORMATION

**Pre-Paid:** Due upon receipt.

**ACH**
Account Name: Mediaocean LLC
Routing #: 021000021
Account #: 448661897

**Wire Transfer**
Account Name: Mediaocean LLC
Routing #: 021000021
Swift Code: Chasus33
Account #: 448661897

**Check**
Mediaocean LLC
PO Box 28139
New York, NY 10087-8139

DocuSign Envelope ID: 77F07F03-A7CA-40FA-9F1A-65CEACC9647A

DocuSign Envelope ID: 77F07F03-A7CA-40FA-9F1A-65CEACC9647A

**Insertion Order and Payment Authorization:**
**Signed By**
**Signed Date**
**Signature**

Marshall Rule
8/15/2018

DocuSigned by:



Marshall Rule
7C6CC24CD1ED4A0...

Page 3 of 3



DocuSign Envelope ID: 87BDC891-8108-4CBC-8466-A0B2C4159E69

# MBuy Insertion Order

## FOR IMMEDIATE ACTION

120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-07452-1

Advertiser PO Number:

### Advertiser Information

**Advertiser Name:**
**Street Address:**411 East 6th Street
PO Box 1915
**City, State, Zip:**Ketchum, Idaho, 83340

### Billing Information

**Billing Name:**ScotteVest
**Street address:**411 East 6th Street
PO Box 1915
**City, State, Zip:**Ketchum, Idaho, 83340

| Media Type | Media Description | Geography | Flight Start Date | Flight End Date | Notes | Media Cost |
|---|---|---|---|---|---|---|
| Search | incremental PPC | National | 12/14/2018 | 12/31/2018 | | USD 15,000.00 |
| | | | | | **Total Media Cost:** | USD 15,000.00 |

Page 1 of 3

DocuSign Envelope ID: 87BDC891-8108-4CBC-8466-A0B2C4159E69

120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-07452-1

## INSERTION ORDER TERMS

**General Placement Guidelines & Limitations of Liability**
MBuy is not responsible for incorrect ad materials run when ad materials or instructions are not received by the ad material deadline. MBuy does not make corrections to ad creative. All creative must be submitted in final format. MBuy will not be held responsible for incorrect and/or invalid creative materials that are submitted from a previous placement. This agreement, along with the mutually signed Mutual Business Agreement and terms and conditions at www.mbuy.com/tc, which are incorporated by reference, contain the entire agreement of the parties and supersedes all prior discussions, agreements and undertakings between the parties with respect to the subject matter hereof; this Insertion Order supersedes inconsistent terms in the terms and conditions.

Materials provided by the Advertiser to MBuy in relation to the provision of these Services do not include any personal data (as defined in the European General Data Protection Regulation) and MBuy does not act as a processor on behalf of the Advertiser in respect of any personal data. In cases where Advertiser requires MBuy to process personal data, Advertiser shall provide instructions to MBuy in writing and enter into a separate agreement regarding the processing of personal data.

**Mutual Non-Disclosure & Confidentiality Agreement**
Both parties agree all Insertion Order specific information shared, including but not limited to: rates, discounts, and/or other deliverables are deemed confidential and may not be disclosed to any third party.

**Payment Terms**
Payment to MBuy must be received by the payment terms selected below. In the event Advertiser and/or Advertiser Agency (collectively, "Advertiser-Purchaser"), as the case may be, fails to make payment, MBuy may discontinue all Ads until payment is received in full. A completed and signed Insertion Order constitutes a binding agreement between Advertiser-Purchaser and MBuy and shall guarantee advertising rates for the period identified in this document. Upon execution of the media buy between MBuy and the media vendor(s)/Publisher, MBuy has fully performed its obligation to purchase media on behalf of the customer. By signing the Agreement the Advertiser-Purchaser agrees to all conditions stated in this Insertion Order, as well as the terms and conditions available at www.mbuy.com/tc (the "TC"). The Advertiser-Purchaser acknowledges and understands: (i) MBuy will not and shall not be required to make any payments on behalf of the Advertiser-Purchaser until MBuy receives all funds payable and/or due to it and (ii) fees owed to MBuy directly will be paid first and the remainder of the funds will be used to make payments on behalf of the Advertiser-Purchaser for the media costs. All capitalized terms used in this Insertion Order and not otherwise defined herein shall have the meaning ascribed to them in the TC.

**Agreement to Terms**
The signature & date below constitutes acceptance of the terms of this Insertion Order and the individual signing represents and warrants that he/she has authority to sign this Insertion Order on behalf of the above listed Advertiser and, if applicable, the Advertiser-Agency.

## PAYMENT INFORMATION

**Net 30:** Due following invoice date.

**ACH**
Account Name: Mediaocean LLC
Routing #: 021000021
Account #: 448661897

**Wire Transfer**
Account Name: Mediaocean LLC
Routing #: 021000021
Swift Code: Chasus33
Account #: 448661897

**Check**
Mediaocean LLC
PO Box 28139
New York, NY 10087-8139

DocuSign Envelope ID: 87BDC891-8108-4CBC-8466-A0B2C4159E69

**Insertion Order and Payment Authorization:**
**Signed By**
**Signed Date**
**Signature**

Marshall Rule
12/18/2018

DocuSigned by:

Marshall Rule

7C6CC24CD1ED4A0...

# EXHIBIT C



CONTACT
WHY MBUY    AGENCIES    DIRECT ADVERTISERS    OUR WORK    ABOUT MBUY
THOUGHT LEADERSHIP    CONTACT US

### Terms & Conditions

Unless otherwise specifically agreed to in writing by MBuy, these Standard Advertising Terms and Conditions ("Terms ") shall govern any and all media buys, which include but are not limited to, insertion orders ("IO"), requests for pricing, and the MBuy Authorization agreement(s) ("MBA"). The submission of an executed IO or an MBA shall be deemed consent to the Terms set forth below. Each IO and/or MBA shall, except to the extent it expressly provides to the contrary, be deemed to incorporate these Terms and, together with them, may be referenced herein or therein as the "Agreement". Agents for one or more third parties are deemed to have agreed to ensure that each third party complies with these Terms as if each third party was the Agent. Each Agent represents that he/she/it has the authority to bind itself and each third party it represents to these Terms.

1. DEFINITIONS

1.1  "Ad" or "Advertisement" means any means any print, television, radio, out of home, and transit advertising, and shall also include digital ad placements, banners, pop-unders, pop-ups, lead generation interactions, interstitials or email content, and any other display of content provided by Agency on behalf of an Advertiser.

1.2  "Advertiser" means the individual or entity whose product or service is the subject of the Ad.

1.3  "Advertiser-Agency" means the third-party Agency that is listed as the agent for Advertiser under an applicable IO and/or MBA.>

1.4  "Advertiser-MBuy" means an advertiser that is submitting IOs directly to MBuy, without the use of an Agency.

1.5  "Advertiser-Agency/MBuy" refers to, as applicable, Advertiser-Agency or Advertiser-MBuy.

1.6  "Advertising Materials" includes any and all information, copy, graphics, artwork, logos, trademarks, active URLs or other material provided by Advertiser or authorized by Advertiser for dissemination in the course of an Advertisement, including, but not limited to, a campaign consisting of multiple media buys (multiple Advertisements shall also collectively be called a "Campaign"), together with any content or materials on any Network Properities, whether or not visible or otherwise apparent to a visitor.

1.7 "**Affiliate**" means, as to an entity, any other entity directly or indirectly controlling, controlled by, or under common control with, such entity.

1.8 "**Agency**" means the advertising agency listed on the applicable IO and/or MBA, where said agency is not MBuy.

1.9 "**Agreement**" means the Terms, the IO and, if applicable, the MBA.

1.10 "**CPA Deliverables**" means Deliverables sold on a cost per acquisition basis.

"**CPC Deliverables**" means Deliverables sold on a cost per click basis.

1.12 "**CPL Deliverables**" means Deliverables sold on a cost per lead basis.

1.13 "**CPM Deliverables**" means Deliverables sold on a cost per thousand impression basis.

1.14 "**Deliverable**" or "**Deliverables**" means the inventory delivered by MBuy (*e.g.*, impressions, clicks, or other desired actions).

1.15 "**IO**" means a mutually agreed insertion order that incorporates these Terms, under which MBuy will deliver Ads either as direct buys or programmatic buying platforms for the benefit of Agency or Advertiser.

1.16 "**Makegoods**", where applicable, additional ad impressions which are negotiated in order to make up for the shortfall of ads delivered versus the commitments outlined in the approved insertion order.

1.17 "**Network Properties**" means websites specified on an IO and/or MBA that are not owned, operated, or controlled by MBuy, but on which MBuy has a contractual right to serve Ads.

1.18 "**Publisher**" An individual or organization that prepares, issues, and disseminates content for public distribution or sale via one or more media.

1.19 "**Representative**" means, as to an entity and/or its Affiliate(s), any director, officer, employee, consultant, contractor, agent, and/or attorney.

1.20 "**Site**" or "**Sites**" means any inventory purchased on behalf of Agency or Advertiser, whether that be direct buys or programmatic buying platforms or traditional media purchases.

1.21 "**Third Party**" means an entity or person that is not a party to an IO and/or MBA; for purposes of clarity, MBuy, Agency, Advertiser, and any Affiliates or Representatives of the foregoing are not Third Parties.

1.22 "**Third Party Ad Server**" means a Third Party that will serve and/or track Ads.

## 2. ORDERS AND INVENTORY POLICIES AND PROCEDURES

2.1 <u>IO Details</u>. As applicable, each IO submitted by Advertiser-Agency/MBuy will specify: (a) the type(s) and amount(s) of Deliverables; (b) the price(s) for such Deliverables; (c) the maximum amount of money to be spent pursuant to the IO; (d) the start and end dates of the campaign; and (e) the name and contact information for any Third Party Ad Server. Advertiser-Agency/MBuy shall include in each IO submitted any reporting requirements (targeting, placements, destination URL, impressions, etc.), any special Ad delivery scheduling, any Ad placement requirements, any specifications concerning ownership of data collected, and any other instructions or specifications that MBuy should consider when purchasing media under said IO. Notwithstanding the foregoing, MBuy has the right to collect and use aggregate data for its business purposes.

2.2 <u>Availability of Inventory</u>. MBuy will make commercially reasonable efforts to notify Advertiser-Agency/MBuy within two (2) business days of receipt of an IO signed by Advertiser-Agency/MBuy if the specified direct or programmatic inventory is not available. Acceptance of the IO and these Terms will be deemed the earlier of (a) written approval of the IO by MBuy and Agency (which, unless otherwise specified, for purposes of these Terms, will include paper, fax, or e-mail communication), or (b) the display of the first Ad impression by MBuy, unless otherwise agreed upon in the IO.

2.3 <u>Revisions</u>. Revisions to accepted IOs must be made in writing and acknowledged by Advertiser-Agency/MBuy in writing before they become binding.

**3. AD MATERIALS**

**3.1** <u>Submission of Ad Materials</u>. Advertiser-Agency/MBuy will be responsible for submitting all Advertising Materials to MBuy.

**3.2** <u>Acceptance of Advertising Materials</u>. Acceptance of all Advertising Materials is subject to review and approval by MBuy and/or the Third-Party Ad Server and/or the Publisher. Unless an insertion order or written instructions that clearly states which advertisement should run is received by the Advertising Materials closing date for advertisements under contract or unless specified in the Advertising Materials, the previously run advertisement will be repeated. If no prior Advertisement is available, MBuy will run a house advertisement and Advertiser will be responsible for the cost of the original insertion order.

**3.3** <u>Specifications</u>. These Terms and the IO are final as to the size, shape, color, length placement, and/or any other attributes of the Advertisement Material(s) as set forth above. All changes thereafter must be approved by MBuy by the Ad space closing deadline and a new IO must be signed. MBuy will not be bound by any condition appearing on IO/contracts or copy instructions submitted by or on behalf of the Advertiser-Agency/MBuy, when such condition conflicts with the Terms and is not signed by MBuy.

3.4 <u>Edits and Corrections</u>. MBuy will use all Ads in strict compliance with these Terms and any written instructions provided on the IO. However, MBuy may, at its discretion, require edits or reject any Ad submitted by Advertiser-Agency/MBuy that it deems inappropriate or that is inconsistent with MBuy's mission and organizational practice. Except as provided in Section 3.6, MBuy will not edit or modify the submitted Ads in any way, including, but not limited to, resizing the Ad, without Advertiser-Agency/MBuy's approval. This Agreement cannot be invalidated for typographical errors, or incorrect insertions. Advertiser-Agency/MBuy shall notify MBuy of such errors immediately. Upon notification, errors will be corrected in the next available placement of the Advertisement that is agreed to and made in these Terms and the applicable IO, provided the production timelines allow for the insertion of the corrected Advertising Material. MBuy shall not be held liable to the Advertiser-Agency/MBuy for any loss that results from the incorrect publication of the Advertisement. MBuy further reserves the right within its discretion to reject or remove any Ads for which the Advertising Materials, software code associated with the Advertising Materials (*e.g.* pixels, tags, JavaScript, etc.), or the website to which the Ad is linked do not comply with these Terms or the terms of the Third-Party Ad Server and/or the Publisher, or that in MBuy's sole reasonable judgment, do not comply with any applicable law, regulation, or other judicial or administrative order. In addition, MBuy reserves the right within its discretion to reject or remove from any Ads for which the Advertising Materials or the website to which the Ad is linked are, or may tend to bring, disparagement, ridicule, or scorn upon MBuy or any of its Affiliates. If MBuy has reviewed and approved such Ads prior to their use, MBuy will make commercially reasonable efforts to acquire mutually acceptable alternative Advertising Materials from Advertiser-Agency/MBuy.

3.5 <u>Late Creative</u>. If Advertising Materials are not received by the IO start date, MBuy will charge Advertiser-Agency/MBuy on a pro rata basis the fee specified on the IO, calculated based on the duration of the full running of the IO, excluding portions consisting of performance-based, non-guaranteed inventory, for each full day the Advertising Materials are not received. If Advertising Materials are late based on the Policies, MBuy is not required to guarantee full delivery of the IO. MBuy and Agency will negotiate a resolution if MBuy has received all required Advertising Materials in accordance with Section 5.1 but fails to commence a campaign on the IO start date.

3.6 <u>Ad Tags</u>. Notwithstanding the foregoing, when applicable, Third Party Ad Server tags will be implemented so that they are functional in all aspects.

3.7 <u>Advertising Material Deadline</u>. All appropriate Advertising Material must be provided in electronic format as outlined in the 2009 AASM Media Guide with accompanying high resolution proof by the ad materials deadline.

3.8  Incorrect Ad Materials and Ad Runs.  MBuy is not responsible for incorrect ad materials run when Ad Materials or instructions are not received by the Ad Material deadline. MBuy does not make corrections to Ad artwork. All Ad artwork must be submitted in final format. MBuy will not be held responsible for incorrect ad sizes or incorrect copy in artwork that is submitted from a previous placement.  MBuy is not responsible for clerical errors, nor will any credits be given for advertising errors not reported after the first issue in which the ad is published.

3.9  Ad Placement.  MBuy is not responsible for Ad placements near competing products unless a prior agreement has been made in writing between MBuy and Advertiser-Agency/MBuy.  MBuy is not responsible for the final reproductive quality of any materials that do not meet the defined specifications of the vendor.

## 4.  AD PLACEMENT AND POSITIONING

4.1  Compliance with IO. MBuy will comply with the IO, including all Ad placement restrictions, and, will create a reasonably balanced delivery schedule. MBuy will complete media buys and provide, within the scope and specifications of the IO, and Ads on the Site specified on the IO that will display when such Site is visited by an Internet user or specific audience. Any exceptions will be approved by Agency in writing.

4.2  Changes to Site(s). MBuy will use commercially reasonable efforts to provide Advertiser-Agency/MBuy at least 10 business days prior notification of any material changes to each Site that would materially change the target audience or materially affect the size or placement of the Ad specified on the applicable IO or, if MBuy does not receive notification until after the foregoing described material change occurred, MBuy will notify Advertiser-Agency/MBuy within 5 business days of it being notified that the foregoing material change to a Site has occurred. Should such a modification occur after MBuy has provided notice to Advertiser-Agency/MBuy that a material change is going to occur to each Site, then Advertiser-Agency/MBuy's sole remedy for such change will be the right to cancel the remainder of the affected placement without penalty, provided Advertiser-Agency/MBuy cancels the affected placement within fiftteen (15) days of receipt of notice of the material change from MBuy. If MBuy has failed to provide Advertiser-Agency/MBuy with notification of a material change to each Site before the material change to the Site(s) occurs, then Advertiser-Agency/MBuy's sole remedy will be the right to cancel the affected placement effective the date of the material change to each Site, provided Advertiser-Agency/MBuy cancel the affected placement within thirty (30) days of the modification of each Site taking effect. Advertiser-Agency/MBuy will be entitled to a refund of any prepaid fees based upon the effective date of cancellation of the affected Ad.

## 5.  REPORTING

5.1. <u>Confirmation of Campaign Initiation</u>. MBuy will, within two (2) business days of the start date on the IO, provide confirmation to Agency, either electronically or in writing, stating whether the components of the IO have begun delivery.

5.2 <u>MBuy Reporting</u>. If MBuy is serving/managing the campaign, MBuy will make reporting available, either electronically or in writing, unless otherwise specified on the IO. Reports may be broken out and summarized by creative execution, content area (Ad placement), impressions, clicks, spend, and other variables as may be defined on the IO (*e.g.*, keywords).

5.3. <u>Makegoods for Reporting Failure</u>. If Advertiser-Agency/MBuy informs MBuy that it has delivered an incomplete or inaccurate report, or no report at all, MBuy will have five (5) business days upon receipt of notice to cure the deficiencies in the report ("Report Cure Period"). If MBuy fails to deliver an accurate and complete report within the Report Cure Period, Agency may initiate makegood discussions.

**6.   THIRD PARTY AD SERVING AND TRACKING (Only Applicable if Third Party Ad Server is used)**

6.1   Although MBuy uses commercially reasonable efforts to provide Advertiser-Agency/MBuy with accurate and up-to-date reports on Advertiser-Agency/MBuy's ad campaigns, MBuy is dependent upon third parties (such as the Publishers) for components of the reports made available to Advertiser-Agency/MBuy, and such third parties do not always provide their reporting components to MBuy in a timely or error-free manner. MBuy updates the reports made available to Advertiser-Agency/MBuy via MBuy's platform several times a day; however Advertiser-Agency/MBuy acknowledge that such reporting is not provided to Advertiser-Agency/MBuy in real-time. To account for corrections and updates that may be provided to MBuy by Publishers from time-to-time, MBuy employs a 48 hour look-back period in which MBuy may make adjustments or updates to Advertiser-Agency/MBuy's reports. Therefore, reports will not be deemed final until 48 hours after such reports are first made available to Advertiser-Agency/MBuy (Final Reports), and Advertiser-Agency/MBuy should not rely on any reports issued prior to the Final Reports.

**7.   FEES: INVOICES: PAYMENT** (Advertiser-Agency, Advertiser-MBuy and Publisher)

7.1 <u>Fees</u>. A completed and duly signed IO guarantees advertising rates for the period identified in the IO.

7.2 <u>Planning Fees</u>. If MBuy's services are requested for strategy/media planning where no media execution occurs, an FTE rate is applied, as follows: Director+ at $125/hour and Account Manager/Lead at $80/hour.

7.3    Payments from Advertiser-Agency or Advertiser-MBuy. Advertiser-Agent/MBuy is directly liable to both MBuy and the relevant advertising medium/publisher for the cost of and expenses related to all media buys and related purchases. Unless alternate arrangements are agreed to in writing, payment to MBuy must be received in full prior to final media placement. In the event Advertiser-Agency/MBuby fails to make payment, MBuy in its sole and absolute discretion may discontinue or suspend or cancel all advertising or a particular advertising campaign from the Advertiser-Agency/MBuy until payment is received in full.  For accounts that are not prepay or for services or products provided that were not prepaid, invoices will be sent by MBuy upon completion of and/or the delivery of the Deliverable, or within 30 days of completion of the IO. Invoices will be sent to the billing address as set forth on the IO and will include reference information reasonably specified and requested by Advertiser-Agency/MBuy.  For those accounts that are not prepay accounts, Advertiser-Agency/MBuy will make payment within 30 days from its receipt of each invoice ("Invoice Due Date").  Advertiser-Agency will be responsible for the payment of all invoices by the Invoice Due Date regardless of whether or not it has been paid by Advertiser.

7.4    Invoices to MBuy.  Payment from MBuy for media invoices shall not be due until after MBuy receives payment from the Advertiser-Agency or Advertiser-MBuy for said media buy.

7.5    Application of Payment.  All payments received and/or paid through or by MBuy shall be applied only to the designated MBuy purchase order, regardless of whether or not Advertiser-Agency/MBuy has a previous outstanding balance for one or more media buys or services.

## 8.  CANCELLATION AND TERMINATION

8.1    Upon execution of the media buy between MBuy and the advertising medium/publisher, MBuy has fully performed its obligation to purchase media on behalf of Advertiser-Agency/MBuy. As the obligation has been fulfilled at time of the media purchase, the payment cannot be cancelled or refunded for any reason and Advertiser-Agency/MBuy acknowledges that MBuy has performed its obligations in full.

8.2    Termination Without Cause.

8.2.1    *By MBuy:* MBuy may cancel this Agreement without cause and without cost with 14 days' prior written notice to Advertiser-Agency/MBuy.

8.2.2    *By Advertiser-Agency/MBuy:* Unless designated on the IO as non-cancelable, Advertiser may cancel the entire IO, or any portion thereof, as follows: (a) with 14 days' prior written notice to MBuy, without penalty, for any guaranteed Deliverable, including, but not limited to, CPM Deliverables (for clarity and by way of example, if Advertiser-Agent/MBuy cancels the guaranteed portions of the IO eight (8) days prior to serving of the first impression, Advertiser-Agent/MBuy will only be responsible for the first six (6) days of those Deliverables); (b) with

seven (7) days' prior written notice to MBuy, without penalty, for any non-guaranteed Deliverable, including, but not limited to, CPC Deliverables, CPL Deliverables, or CPA Deliverables, as well as some non-guaranteed CPM Deliverables; and (c) with 30 days' prior written notice to MBuy, without penalty, for any flat fee-based or fixed-placement Deliverable, including, but not limited to, roadblocks, time-based or share-of-voice buys, and some types of cancelable sponsorships.

8.2.3   Effect of Termination.  Advertiser-Agency/MBuy will remain liable to MBuy for amounts due for any custom content or development ("**Custom Material**") provided to Advertiser-Agency/MBuy or completed by MBuy or its third-party vendor prior to the effective date of termination. For IOs that contemplate the provision or creation of Custom Material, MBuy will specify the amounts due for such Custom Material as a separate line item. Advertiser-Agency/MBuy will pay for such Custom Material within 30 days from receiving an invoice therefore.

8.3   Termination For Cause.

8.3.1   *By Either Party.*  Either MBuy or Agency-Agent/MBuy may terminate an IO at any time if the other party is in material breach of its obligations hereunder, which breach is not cured within 10 days after receipt of written notice thereof from the non-breaching party, except as otherwise stated in these Terms with regard to specific breaches. Additionally, if Advertiser-Agency/MBuy breaches any of its obligations under the Agreement three (3) times and receives timely notice of each such breach, even if Advertiser-Agency/MBuy cures each such breach, MBuy may terminate the IO or placements associated with such breach upon written notice. If Agency- Advertiser/MBuy does not cure a violation of the Agreement within the applicable 10-day cure period, then MBuy may terminate the IO and/or placements associated with such breach upon written notice.

8.3.2   *Effect of Termination.*  MBuy will be obligated to refund any prepaid fees paid for any IO or placements that were in violation of the Agreement.  Agency-Agent/MBuy will not be entitled to any refund of prepaid fees and will be obligated to pay in full the fees for all IOs or placements. Short rates will apply to cancelled buys to the degree stated on the IO.

## 9.  PROPRIETARY RIGHTS; INFORMATION; INTELLECTUAL PROPERTY RIGHTS

9.1   Use of Data.  Advertiser-Agency/MBuy has the right to use all data derived from Advertiser-Agency's/MBuy's use of the MBuy services for any legal purpose that complies with Advertiser-Agency's/MBuy's own privacy policy, provided that MBuy may use and disclose data derived from Advertiser-Agency's/MBuy's use of the MBuy services (a) as part of its business operations, to disclose aggregate statistics about the MBuy services in a manner that does not make available individual

identification of Advertiser-Agency/MBuy information; (b) to the extent necessary to operate, manage, maintain and enhance any of the MBuy services and to provide and launch new services; and (c) if required by court order, law or governmental agency. Without limiting the generality of the above, Advertiser-Agency/MBuy understand that MBuy may use information derived from Advertiser-Agency's/MBuy's use of the MBuy services (such as the performance of a particular bid price) to enhance, refine and improve the quality of the MBuy services and the MBuy platform, and that the benefit of such enhancements, refinements and/or improvements will be shared with all MBuy customers. For the avoidance of doubt, MBuy will not disclose Advertiser-Agency/MBuy specific information to other MBuy customers. Rather, other MBuy customers will receive the benefit of the learning what MBuy obtains from information derived from Advertiser-Agency/MBuys use of the MBuy services, just as Advertiser-Agency/MBuy will receive the benefit of the learning what MBuy obtains from information derived from use of the MBuy serviced by other Advertiser-Agency/MBuys.

9.2   <u>Privacy; Personally Identifiable Information</u>. Advertiser-Agency/MBuy agrees to comply with all applicable privacy laws and regulations, and to post conspicuously on each of Advertiser-Agency/MBuy Websites, a privacy policy that: (a) describes how Advertiser-Agency/MBuy collects, uses, stores and discloses information obtained from end users of Advertiser-Agency/MBuy Websites, and (b) includes a prominent mechanism (e.g. link) by which end users can opt-out of the collection of such information. Advertiser-Agency/MBuy further agrees to comply with such posted privacy policy. As part of such privacy policy, Advertiser-Agency/MBuy will disclose that Advertiser-Agency/MBuy works with third parties for the delivery of advertisements and such third parties may collect non-personally identifiable information about end users who view the advertisements. MBuy further recommends that Advertiser-Agency/MBuy disclose that: (x) Advertiser-Agency/MBuy uses pixels provided to Advertiser-Agency/MBuy by a third party to track the number of end-user conversions obtained from Advertiser-Agency/MBuy advertising, and (y) a cookie provided to Advertiser-Agency/MBuy by a third party will be placed on the computer of each end-user that clicks on an Advertisement so that future advertisements can be targeted to that end-user based on the advertisements clicked on by that end-user. MBuy shall not be liable for any failure by Advertiser-Agency/MBuy to make any required or recommended disclosures. Advertiser-Agency/MBuy further agrees that, to the extent personally identifiable or other information is collected from or regarding end users of the Websites by Advertiser or Agency on Advertiser's behalf, Advertiser and/or Agency will obtain all necessary rights and consents from such end users related to the collection of such information, and will not merge such information with non-personally identifiable information without obtaining notice and consent in accordance with best industry practices. Advertiser-Agency/MBuy further agrees that Advertiser-Agency/MBuy will not communicate to MBuy any personally identifiable information about any end user of the Websites.

9.3  Ownership; MBuy Platform.  MBuy at its sole discretion and subject to Advertiser-Agency/MBuy compliance with the terms and conditions of this Agreement, MBuy may grant to Advertiser-Agency/MBuy a non-exclusive, nontransferable, nonsublicensable license to access and use, by means of a web browser and unique password, the MBuy platform solely in connection with accessing and generating customized reporting related to Advertiser-Agency/MBuy advertising campaigns. Advertiser-Agency/MBuy acknowledges that the license set forth above conveys no title or ownership rights to the MBuy platform. MBuy retains all right, title and interest in and to the MBuy Services, the MBuy platform, and all information displayed within the MBuy platform, including without limitation, all trademarks, service marks, logos and content, together with all intellectual property rights thereto. Advertiser-Agency/MBuy may not modify, reproduce, copy, reverse engineer, decompile, reverse assemble or otherwise attempt to discover the source code or algorithms for the MBuy platform or the MBuy services. Advertiser-Agency/MBuy may not rent, sell, sublicense, assign, or otherwise transfer Advertiser-Agency/MBuys right to access and use the MBuy platform or the MBuy services. Advertiser-Agency/MBuy agrees that Advertiser-Agency/MBuy will not use any device, software or routine to interfere with the proper working of the MBuy platform or the MBuy services. Advertiser-Agency/MBuy further agrees that Advertiser-Agency/MBuy will not use any automated means, including, without limitation, agent, robots, scripts or spiders to access Advertiser-Agency/MBuy account or to monitor or copy the MBuy platform or the MBuy services, or any component thereof.

9.4  Password; Access to MBuy Platform.  At MBuy's sole discretion, MBuy may grant Advertiser-Agency/MBuy a password to the MBuy platform, which Advertiser-Agency/MBuy will then be solely responsible for maintaining the confidentiality of Advertiser-Agency/MBuy user name and password, and for all activities that occur under Advertiser-Agency/MBuy user name and password. Advertiser-Agency/MBuy is solely responsible for all third party access to Advertiser-Agency/MBuy MBuy account by any person, whether authorized or not, unless unauthorized access was caused by MBuy's willful misconduct or gross negligence. If Advertiser-Agency/MBuy becomes aware of any unauthorized use of Advertiser-Agency/MBuy account or password, Advertiser-Agency/MBuy agrees to provide MBuy with written notice via email to accounts@MBuy.com as soon as possible so that MBuy can suspend use of Advertiser-Agency/MBuy account and password until a new password is issued.

9.5  For the purpose of performing this Agreement, Advertiser-Agency/MBuy hereby grants MBuy a limited, non-exclusive, royalty-free, world-wide right and license to market, to use, market, display, publish, perform, transmit distribute and or authorize the use of any content, marks, logos, trade dress or Advertising Material for the purpose of executing or performing the terms of this Agreement on its network or any third-party network or website(s) or throughout the MBuy Inventory.

9.6   Trademark Usage.  MBuy, on the one hand, and Advertiser-Agency/MBuy, on the other, will not use the other's trade name, trademarks, logos, or Ads in any public announcement (including, but not limited to, in any press release) regarding the existence or content of these Terms or any IO without the other's prior written approval.  Neither party shall use, display, or modify the other party's logos, trademarks or trade dress in any Advertisement or any related Advertising Materials in any manner without the prior written consent of the other party.

9.7   Advertiser-Agency/MBuy will remain at all times the owner of its Advertising Materials and all intellectual property rights therein, and MBuy will not acquire any interest therein by reason of any this Agreement.  These Terms do not affect or modify ownership interest in Advertising Materials between Advertiser and Agency.

9.8   Reservation of Rights.  Each party reserves all rights not expressly granted hereunder.

## 10.  CONFIDENTIALITY.

10.1   Advertiser-Agency/MBuy will keep the existence and terms of any I/O or MBA it enters into confidential and shall not publish any press release or make any other public announcement with respect hereto without the prior written consent of MBuy. Advertiser-Agency/MBuy will not use any confidential information of MBuy, which includes the terms of any I/O or MBA, except solely for the purposes contemplated by the I/O or the MBA and will refrain from disclosing such confidential information to any third party unless such disclosure is necessary and permitted in connection with Advertiser-Agency/MBuy's obligations or exercise of its rights under this Agreement or otherwise by agreement between the parties. If disclosure of such confidential information is required by applicable law, Advertiser-Agency/MBuy and/or Publisher/advertising medium will (a) promptly notify MBuy so as to afford MBuy a reasonable opportunity to seek an order or other appropriate relief for the protection of its confidential information from any unauthorized use or disclosure, (b) cooperate with MBuy in any effort it may wish to undertake to obtain such relief, and (c) only disclose so much of such confidential information as it is advised by counsel in writing is necessary to comply with applicable law and avoid sanctions. For purposes of this Agreement, "confidential information" is any proprietary or confidential information of MBuy that is identified as such by MBuy, or which Advertiser-Agency/MBuy should recognize by its nature as likely to be such, including without limitation, the terms of this Agreement (including pricing).  The following information will not be deemed confidential: (w) information that is already known to Advertiser-Agency/MBuy, (x) information that is generally available to the trade, (y) information that is received by Advertiser-Agency/MBuy from another without any obligation to maintain its confidentiality, or (z) information that is subsequently developed by Advertiser-Agency/MBuy independent of confidential information belonging to the provider.

Advertiser-Agency/MBuy and will return or destroy such Confidential Information upon demand and otherwise upon expiration of the terms of this Agreement, or any I/O or MBA.

## 11. REPRESENTATIONS AND WARRANTIES

11.1 <u>Advertiser-Agency/MBuy Representations</u>. Advertiser-Agency/MBuy represents and warrants at all times that (a) Advertiser-Agency/MBuy has all necessary right, power and authority to enter into this Agreement, or any I/O, and to grant the right and license to publish the Advertisements and all related Advertising Materials set forth herein pursuant to this Agreement, or any I/O, (b) the execution of this Agreement, or any I/O by Advertiser-Agency, and the performance of its obligations and duties hereunder, do not and will not violate any agreement to which Advertiser-Agency/MBuy is a party or by which it is otherwise bound; (c) the links contained in any Advertisement or Campaign are directed to the intended and agreed upon destination; (d) the Advertisements are accurate and complete, and are supported by competent and reliable prior substantiation in advance of their publication and dissemination, and are in compliance with all applicable federal, state, and local laws regarding deceptive trade practices, fair competition and consumer protection; (e) the Advertisements, the use and display thereof, and the content linked to and from the Advertisements, do not and will not: (i) infringe or violate the patents, copyrights, trademarks, rights of publicity, music performance or other music-related rights, or any other right of any third party, (ii) be misrepresentative, libelous, defamatory, or obscene, (iii) violate any applicable law or regulation, or (iv) advertise any unlawful product or service or the unlawful sale of any product or service; and (f) Advertiser-Agency/MBuy has the authority to authorize MBuy to act as its agent for the purpose of placing media buys or any other action required under any agreement between MBuy and Advertiser-Agency/MBuy.

11.2 <u>MBuy Representations</u>. MBuy makes no representation or warranty, express or implied, with respect to the subject matter hereof, including without limitation any media buys, Advertisement, Advertising Materials, the Network Properites, any Leads or their respective business practices, and expressly disclaims the implied warranties of merchantability or fitness for a particular use. In particular, and without limitation, MBuy makes no representation or warranty with respect to the quality or responsiveness of any Advertisement or any media buy.

11.3 <u>Designation as Agent</u>. Advertiser-Agency/MBuy designates and authorizes MBuy to act as its agent for the purpose of bidding on inventory, placing media buys or Advertisements on its behalf, and any other related purchases and performing all other actions required under any agreement between MBuy and Advertiser-Agency/MBuy. Advertiser-Agency/MBuy shall be deemed the principal for all such purchases.

## 12. LIMITATION OF LIABILITY; DISCLAIMER; INDEMNIFICATION

12.1   Lost Profits, Incidental and Consequential Damages.  NEITHER PARTY SHALL BE LIABLE FOR ANY LOST PROFITS OR SPECIAL, INDIRECT, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF SUCH DAMAGES ARE FORESEEABLE AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

12.2   MBuy Limitation of Liability.  EXCEPT AS IT RELATES TO  MBUY'S INDEMNIFICATION OBLIGATIONS, MBUY'S ENTIRE LIABILITY HEREUNDER (OTHER THAN FOR THE PAYMENT OF FEES) SHALL IN ALL EVENTS BE LIMITED TO AN AMOUNT NOT TO EXCEED THE AMOUNT ACTUALLY PAID BY ADVERTISER-AGENCY/MBUY IN THE SIX (6) MONTHS PRIOR TO THE EVENT GIVING RISE TO A CLAIM.

12.3   Advertiser-Agency/MBuy Limitation of Liability.  EXCEPT AS IT RELATES TO ADVERTISER-AGENCY'S/MBUY'S CONFIDENTIALITY AND INDEMNIFICATION OBLIGATIONS AND EXCEPT FOR THE AMOUNTS OWED ON UNPAID INVOICES, ADVERTISER-AGENCY'/MBUY'S ENTIRE LIABILITY HEREUNDER (OTHER THAN FOR THE PAYMENT OF FEES) SHALL IN ALL EVENTS BE LIMITED TO AN AMOUNT NOT TO EXCEED THE AMOUNT OWED BY ADVERTISER-AGENCY/MBUY IN THE SIX (6) MONTHS PRIOR TO THE EVENT GIVING RISE TO A CLAIM.

12.4   Disclaimer of Warranties.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, MBUY DOES NOT MAKE, AND IT SPECIFICALLY DISCLAIMS, ANY AND ALL REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE

12.5   Advertiser-Agency/MBuy shall indemnify, defend and hold harmless MBuy and its affiliates, successors and assigns, and the members, shareholders, officers, directors, agents, distributors, franchisees and employees ("Released Parties") of any of them, from and against any and all liabilities, losses, expenses, damages and costs (including, without limitation, reasonable attorney's fees) that may at any time or from time to time be incurred by any of the Released Parties by reason of any third party claims, suits, actions, causes of action or proceedings arising out of any breach by the Advertiser-Agency/MBuy of any representation or warranty or other term or condition hereunder or, as a result of the products and services advertised in the Campaigns and the offer, sale, delivery, use and disposal thereof. Advertiser-Agency/MBuy shall defend any such claim, etc. with counsel of its choice, reasonably acceptable to the other party, which other party will reasonably cooperate in the defense of any such claim.

## 13.  MISCELLANEOUS

13.1   Insurance. Advertiser-Agency/MBuy shall at all times maintain insurance in at least the minimum amounts and coverages as are standard in its industry.

13.2 <u>Entire Agreement</u>. This Agreement, along with the executed I/O and/or MBA, sets forth the entire agreement between Advertiser-Agency/MBuy and MBuy and publisher/advertising medium and MBuy with respect to the subject matter hereof, and supersedes any and all prior agreements, understandings or undertakings with respect thereto. If an advertising agency, broker or other intermediary signs an I/O or MBA on behalf of Advertiser-Agency/MBuy, the agency thereby represents and warrants that it has full authority to bind Advertiser-Agency/MBuy to the terms of this Agreement and that it will ensure that Advertiser-Agency/MBuy complies with all such terms.

13.3 <u>Assignment</u>. Neither Advertiser-Agency/MBuy, nor publisher/advertising medium shall make any assignment of this Agreement, or any of its rights, benefits or obligations hereunder (including, without limitation, by way of merger or consolidation), without the prior written consent of MBuy and any purported assignment in violation hereof shall be void. In the event of a permitted assignment, this Agreement shall be fully binding upon, inure to the benefit of and be enforceable by the parties hereto and Advertiser-Agency/MBuy's successors and assigns.

13.4 <u>Governing Law and Venue</u>. Any agreements between MBuy and Advertiser-Agency/MBuy and between MBuy and publisher/advertising medium shall be governed by the laws of the State of Illinois, without giving effect to any principles that may provide for the application of the laws of another jurisdiction. The parties hereby consent to the jurisdiction of the state and federal courts located in Cook County, Illinois, with respect to any claim arising under or by reason of this Agreement. The Parties will not prosecute any action, suit, proceeding or claim arising under or by reason of this Agreement except in such courts.

13.5 <u>Force Majeure</u>. No party shall be responsible for any delay or failure to perform hereunder by reason of any technical failure or errors, network disruption, labor shortage or difficulty, act of god, war or civil disorder, governmental act or any other thing beyond its reasonable control.

13.6 <u>Notice</u>. Any notice required or permitted to be given to MBuy or Advertiser-Agency/MBuy or publisher/advertising medium shall be in writing and shall be delivered by courier to the contact person for that party specified on the I/O or MBA or, if none, the person signing the I/O on behalf of the party. All notices to MBuy shall be delivered to 444 North Michigan Avenue Chicago, IL 60611, and to Advertiser-Agency/MBuy at the address specified in the I/O or MBA, if none specified, then to the last known address of the Advertiser-Agency/MBuy.

13.7 <u>Revisions</u>. MBuy reserves the right to modify, amend or revise the Terms and Conditions at any time without notice. It is Advertiser-Agency/MBuy's and/or publisher/Advertiser-Agency/MBuy

medium/vendor's responsibility to review the Terms and Conditions periodically in order to stay current on any modifications, amendments or revisions.

13.8    Conflicts In the event of any inconsistency between the terms of an IO and these Terms, the terms of the IO will prevail, if executed by MBuy.

13.9    Headings. Section or paragraph headings used in these Terms are for reference purposes only, and should not be used in the interpretation hereof.

13.10   Attorney's Fees; Costs.  The prevailing party will be entitled to recover its reasonable attorney's fees and costs associated with any dispute involving or that arises out of this Agreement.

13.11   Survival. Sections 7-13 will survive termination or expiration of these Terms.



**CHICAGO HEADQUARTERS**
**120 South Riverside Plz Suite 1900 Chicago, IL 60606 US**

**NEW YORK**
**45 West 18th Street, New York, NY 10011 US**

**LOS ANGELES**
**12100 Wilshire Blvd, Suite 720, Los Angeles, CA 90025 US**

COPYRIGHT © 2019 MBUY
MBuy is a Mediaocean company
PRIVACY POLICY | CONTACT
FIND US ON: FACEBOOK | TWITTER | LINKEDIN

First Name *

Last Name *

Job Title *

Company Name *

Email Address *

Company Website (Optional)

Phone Number *

Any personal information you choose to share with us via this website will be handled in accordance with our privacy policy.

Submit

# EXHIBIT D



# Mutual Business Agreement

Marshall Rule
ScotteVest
411 East 6th St
Ketchum, ID 83340
386-909-8378
www.scottevest.com

120 S. Riverside Plaza, Suite 1900
Chicago, IL 60606
Phone: 312 784 2336
Secure Fax: 312 870 1787
www.mbuy.com

**Presented by: Rachel Stone**

**1. Getting Started:** The purpose of this agreement is to clearly establish the roles and responsibilities of the parties involved in the planning, negotiation, and purchasing of media inventory. To optimize and analyze your media buys for maximized results, MBuy will leverage its proprietary tools, technology, processes, and expertise to perform single source market analysis, negotiation(s), rate preparations and media purchases for **ScotteVest** (the "Advertiser").

**2. Mutual Non-Disclosure & Confidentiality Agreement:** Both parties agree that all information shared, including but not limited to: pricing proposals, insertion orders, posting reports and other deliverables are deemed confidential and may not be disclosed to any third party for a period of (24) months after the expiration of the term of this agreement. MBuy will not disclose specific unit rates.

**3. Term:** The initial term of this authorization agreement will commence on **1/1/2019** and continue until **12/31/2019** (the "Term").

**4. What We Do - MBuy Technology Platform Value:** Upon execution of this agreement, MBuy will provide access, via a dedicated MBuy account representative, to our proprietary Managed Media Services & Technology Platform including, but not limited to: optimized media negotiation and buying services, strategic media planning, market rate analysis, ongoing placement, execution, trafficking and stewardship of campaigns, a single point of accountability for all media types, consolidated billing and ROI reporting.

**5. Working Together - Advertiser Responsibilities:** Advertiser agrees to work with MBuy to communicate advertising campaign goals, key performance indicators, vendor selection, and overall marketing objectives. In order to receive actionable and optimized media plans and rate preparations from MBuy, the Advertiser agrees to provide relevant current and/or historical media unit rates and budgets for purposes of rate analysis and buy optimization. To ensure optimum results and to secure available inventory and MBuy rates, the Advertiser must sign and return an approved insertion order via our certified secure electronic signature service (i.e., Docusign) within 48 hours of receipt. If MBuy's services are requested for media strategy & planning and no media execution occurs, a FTE rate is applied and the Advertiser agrees to pay MBuy as follows: Director at $125/hour and Account Manager/Media Analyst at $80/hour

    **5A: Fees-**
- MBuy will take a reduced margin of 15% (vs. 20%) on the planning and placement of digital media with the exception of SEM at 18%
- MBUY will charge a reduced margin of 12.5% on the planning and placement of traditional media

**6. Payment** – Unless alternate arrangements are made and agreed to in writing by MBuy, media placement will be executed and implemented only upon Advertiser payment. In the event Advertiser fails to make payment, MBuy may discontinue all advertising from the Advertiser until payment is received in full based on available cancellation terms. In the case of Network media or OOH, it is non-cancellable. Advertiser agrees to pay for media via check, electronic funds transfer, money order, cashier's check, or dedicated Advertiser escrow. MBuy shall only be liable for payments of media invoices if MBuy has been paid for those invoices by the Advertiser. MBuy will invoice Advertiser for all media costs, where possible, in advance of MBuy's payment date to allow for prompt prepayment by the Advertiser so that Advertiser may receive the benefit of any additionally available prepayment or similar discounts. Rate or billing adjustments shall be credited or charged to Advertiser on the next following regular invoice date or as soon as otherwise practical. All new media purchased by MBuy on behalf of Advertiser during the term of this Agreement will be MBuy Rates.

**7. Planning Allocations - Current & Future Media Spending:**

| Media Types | Campaign Flight | Market(s) | Addressable Budget |
|---|---|---|---|
| All | January 2019 – December 2019 | National | ~$5,000,000(apprx) |

**9. What Comes Next? Insertion Order:** A sample insertion order document can be provided for review as part of this agreement.

**10. Entire Agreement:** This document contains the entire agreement of both parties and supersedes all prior written or verbal discussions or agreements.

**I understand and agree to the terms of the Mutual Business Agreement.**

| | | | |
|---|---|---|---|
| _(signature)_ | 1/8/19 | | |
| Advertiser/ Agency Signature | Date | MBuy Signature | Date |
| Marshall Rule | SCOTTeVEST | | |
| Advertiser/Agency Name | Advertiser/Agency Company | MBuy Name | Title |

# EXHIBIT E

120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-07506-1

# MBuy Insertion Order

## FOR IMMEDIATE ACTION

Advertiser PO Number:

### Advertiser Information
**Advertiser Name:** ScotteVest
**Street Address:** 411 East 6th Street
PO Box 1915
**City, State, Zip:** Ketchum, Idaho, 83340

### Billing Information
**Billing Name:** ScotteVest
**Street address:** 411 East 6th Street
PO Box 1915
**City, State, Zip:** Ketchum, Idaho, 83340

| Media Type | Media Description | Geography | Flight Start Date | Flight End Date | Notes | Media Cost |
|---|---|---|---|---|---|---|
| Social | Social Video - FB/IG | National | 1/1/2019 | 1/31/2019 | | USD 8,000.00 |
| Social | Product Catalog | National | 1/1/2019 | 1/31/2019 | | USD 16,000.00 |
| Display | Prospecting, Contextual, Remarketing | National | 1/1/2019 | 1/31/2019 | | USD 30,000.00 |
| Search | Google/Bing | National | 1/1/2019 | 1/31/2019 | | USD 31,000.00 |
| Direct Buys | Amazon AMS | National | 1/1/2019 | 1/31/2019 | | USD 30,000.00 |
| | | | | | **Total Media Cost:** | USD 115,000.00 |

Page 1 of 3



DocuSign Envelope ID: 6D10965C-C770-47Z2-B40A-E6C5EFC0F838

120 S. Riverside Plaza, Suite 1900
Chicago, IL, 60606
Direct 312.334.2872
Fax 312.870.1780
Insertion ID: Q-07506-1

## INSERTION ORDER TERMS

General Placement Guidelines & Limitations of Liability
MBuy is not responsible for incorrect ad materials or instructions are not received by the ad material deadline. MBuy does not make corrections to ad creative. All creative must be submitted in final format. MBuy will not be held responsible for incorrect and/or invalid creative materials that are submitted from a previous placement. This agreement, along with the mutually signed Mutual Business Agreement and terms and conditions at www.mbuy.com/tc, which are incorporated by reference, contain the entire agreement of the parties and supersedes all prior discussions, agreements and undertakings between the parties with respect to the subject matter hereof; this Insertion Order supersedes inconsistent terms in the terms and conditions.

Materials provided by the Advertiser to MBuy in relation to the provision of these Services do not include any personal data (as defined in the European General Data Protection Regulation) and MBuy does not act as a processor on behalf of the Advertiser in respect of any personal data. In cases where Advertiser requires MBuy to process personal data, Advertiser shall provide instructions to MBuy in writing and enter into a separate agreement regarding the processing of personal data.

Mutual Non-Disclosure & Confidentiality Agreement
Both parties agree all Insertion Order specific information shared, including but not limited to: rates, discounts, and/or other deliverables are deemed confidential and may not be disclosed to any third party.

Payment Terms
Payment to MBuy must be received by the payment terms selected below. In the event Advertiser and/or Advertiser Agency (collectively, "Advertiser-Purchaser"), as the case may be, fails to make payment, MBuy may discontinue all Ads until payment is received in full. A completed and signed Insertion Order constitutes a binding agreement between Advertiser-Purchaser and MBuy and shall guarantee advertising rates for the period identified in this document. Upon execution of the media buy between MBuy and the media vendor(s)/Publisher, MBuy has fully performed its obligation to purchase media on behalf of the customer. By signing the Agreement the Advertiser-Purchaser agrees to all conditions stated in this Insertion Order, as well as the terms and conditions available at www.mbuy.com/tc (the "TC"). The Advertiser-Purchaser acknowledges and understands: (i) MBuy will not and shall not be required to make any payments on behalf of the Advertiser-Purchaser until MBuy receives all funds payable and/or due to it and (ii) fees owed to MBuy directly will be paid first and the remainder of the funds will be used to make payments on behalf of the Advertiser-Purchaser for the media costs. All capitalized terms used in this Insertion Order and not otherwise defined herein shall have the meaning ascribed to them in the TC.

Agreement to Terms
The signature & date below constitutes acceptance of the terms of this Insertion Order and the individual signing represents and warrants that he/she has authority to sign this Insertion Order on behalf of the above listed Advertiser and, if applicable, the Advertiser-Agency.

## PAYMENT INFORMATION

Net 30: Due following invoice date.

**ACH**
Account Name: Mediaocean LLC
Routing #: 021000021
Account #: 448661897

**Wire Transfer**
Account Name: Mediaocean LLC
Routing #: 021000021
Swift Code: Chasus33
Account #: 448661897

**Check**
Mediaocean LLC
PO Box 28139
New York, NY 10087-8139

DocuSign Envelope ID: 6D10965C-C770-4722-B40A-E6C5EFC0F838

**Insertion Order and Payment Authorization:**
**Signed By**
**Signed Date**
**Signature**

Marshall Rule
1/2/2019

DocuSigned by:

*Marshall Rule*

7C6CC24CD1ED4A9...

Page 3 of 3

# EXHIBIT F

 POWERED BY medioocean

**MBUY**
**120 S Riverside Plaza**
**Suite 1900**
**Chicago, IL 60606**
**Tel +1 312 870 1700**
**email: mbuybillings@mbuy.com**

ScotteVest
411 East 6th Street
PO Box 1915
Ketchum, Idaho 83340

| Invoice Date | 1/11/2019 |
|---|---|
| Due Date | 2/10/2019 |
| Invoice Number | US-13170-SI |

**Billing Period**   December 2018

| Description | Amount |
|---|---|
| Display | $79,301.36 |
| Search | $86,705.22 |
| Social | $19,803.15 |
| Video | $10,000.00 |
| Native | $13,957.38 |
| Direct Buy | $9,924.77 |
| **Total Due:** | **$219,691.88** |

| Please remit payment to: | **JPMorgan Chase Bank, N.A.** | **MBUY** |
|---|---|---|
| | Account # 448661897 | P.O. Box 28139 |
| | Routing # 021000021 | NEW YORK, NY, 10087-8139 |
| | Swift Code CHASUS33 | |

# EXHIBIT G

 POWERED BY *medioocean*

**MBUY**
**120 S Riverside Plaza**
**Suite 1900**
**Chicago, IL 60606**
**Tel +1 312 870 1700**
**email: mbuybillings@mbuy.com**

ScotteVest
411 East 6th Street
PO Box 1915
Ketchum, Idaho 83340

| | |
|---|---|
| Invoice Date | 2/14/2019 |
| Due Date | 3/1/2019 |
| Invoice Number | US-13542-SI |

**Billing Period**     January 2019

| Description | Amount |
|---|---|
| Display | $30,579.98 |
| Search | $47,653.42 |
| Social | $25,717.71 |
| Native | $341.10 |
| **Total Due:** | **$104,292.21** |

**Please remit payment to:**     **JPMorgan Chase Bank, N.A.**     **MBUY**
                                 Account # 448661897                P.O. Box 28139
                                 Routing # 021000021                NEW YORK, NY, 10087-8139
                                 Swift Code CHASUS33